GRAY ET AL. v. SWERER ET AL.

[No. 7,704.    Filed April 4, 1911.]

1.  EXECUTORS AND ADMINISTRATORS.—*Distribution.*—*Petition for.*— *Judgment.*—*Issues.*—*Costs.*—A motion to modify a judgment for partial distribution of funds in the hands of an administrator on the ground that such judgment should state the estate's liability for certain costs, was properly overruled, such question being without the issues.  p. 387.

2.  DESCENT AND DISTRIBUTION.—*Refunding Bonds.*—*Administrators.*—Under §2903 Burns 1908, §2380 R. S. 1881, the court, on ordering a partial distribution to heirs of money in the hands of an administrator, should require the filing of refunding bonds by such heirs.  p. 388.

3.  DESCENT AND DISTRIBUTION. — *Heirs.* — *Administrators.* — The rules of civil procedure prevail in applications by heirs for the distribution of funds in the hands of administrators, but such rules will be liberally applied, the only object being to secure a presentation of the matter in clear and concise form. p. 388.

4.  DESCENT AND DISTRIBUTION.—*Property Obtained by Gift, Devise or Descent.*—*Statutes.*—Section 2994 Burns 1908, §2471 R. S. 1881, providing, under certain conditions, for the descent of property to the paternal and maternal heirs, includes personal as well as real property.  p. 388.

5.  DESCENT AND DISTRIBUTION.—*Property Obtained by Gift, Devise or Descent.*—*How Determined.*—Section 2994 Burns 1908, §2471 R. S. 1881, providing that property coming to the decedent by gift, devise or descent from the paternal, or maternal, line shall descend to that line, applies only where the property given, devised or inherited remains in kind and has not been converted, reinvested or changed by the decedent.  p. 389.

6.  DESCENT AND DISTRIBUTION.—*Property Obtained by Descent.*— *Line of Inheritance.*—Where decedent, the sole heir and legatee of his deceased mother, was appointed administrator of her estate and died intestate, before making any disposition of the personal property, and the administrator *de bonis non* of said mother's estate converted such property into cash, decedent, leaving as his sole heirs a maternal aunt and certain maternal and paternal cousins, his maternal heirs take such cash, under

Gray *v.* Swerer—47 Ind. App. 384.

subdivision two, §2994 Burns 1908, §2471 R. S. 1881, providing that where an inheritance comes to an "intestate by gift, devise, or descent from the maternal line, it shall go to the maternal kindred in the same order;" and this follows regardless of the source of the mother's title to the property. *Rountree* v. *Pursell*, 11 Ind. App. 522, distinguished. p. 389.

7. DESCENT AND DISTRIBUTION.—*Inheritance.*—*Right of.*—The right of inheritance in Indiana is wholly statutory. p. 390.

8. DESCENT AND DISTRIBUTION.—*"Ancestor."*—*How Determined.*—The word "ancestor," as used in statutes of descent, means the person from whom the estate is inherited, and in determining from whom the estate comes the title should be traced only to the person last seized. p. 390.

From Probate Court of Marion County (8517); *Frank B. Ross,* Judge.

Proceeding by Olive Swerer and others against John F. Gray and others. From an order for plaintiffs, defendants appeal. *Affirmed.*

*Lecklider & Myers* and *Harry A. Fenton,* for appellants. *Frank B. Jaqua,* for appellees.

ADAMS, J.—Isaac P. Gray died testate on February 14, 1895, leaving surviving him his widow, Eliza J. Gray, and his two sons, Pierre and Bayard Gray. Pierre Gray died testate on November 25, 1907, leaving no children, but leaving a widow, mother and brother. Eliza J. Gray died on February 13, 1908, testate as to her personal property and intestate as to .her real estate. Bayard Gray was the sole heir and legatee of Eliza J. Gray, and was appointed administrator with the will annexed of her estate. Bayard Gray died intestate on May 24, 1908, leaving surviving him no children, widow, father or mother, grandfather or grandmother, brothers or sisters, and no heirs at law either in the ascending or descending line, but left as his only heirs at law a maternal aunt and certain maternal and paternal cousins.

After the death of Bayard Gray, Benjamin E. Hinshaw was appointed administrator *de bonis non* with the will an-

nexed of the estate of Eliza J. Gray, and Edwin S. Jaqua was appointed administrator of the estate of Bayard Gray. At the date of the death of Eliza J. Gray she was the owner of certain household goods, bank stock, notes and accounts and an uncollected legacy bequeathed to her by the will of her son, Pierre Gray. Such property came into the hands of Hinshaw, administrator, and after collecting the notes, accounts and legacy, upon order of the Probate Court of Marion County, said administrator sold the household goods and bank stock. Said Hinshaw, administrator, on February 10, 1910, turned over to the administrator of the estate of Bayard Gray the sum of $7,263.75.

This cause arises upon a petition by the maternal heirs of Bayard Gray for an order of the Probate Court of Marion County directing the distribution of a portion of their shares in the estate of Bayard Gray in advance of final settlement. Said petition shows that Hinshaw, administrator, prior to the payment of said $7,263.75 to the administrator of the estate of Bayard Gray, had sold the bank stock for $6,600, the household property for $1,263.75, had collected notes and accounts amounting to $1,292, and a legacy bequeathed to decedent by her deceased son, in the sum of $1,362.33, all of which personal property was owned by said Eliza J. Gray at her decease, and that no part of it ever came to Bayard Gray by gift, devise or descent from any other person or source; that no part of said personal property or funds has ever been reinvested, or in any manner changed by said administrator, but consists of the identical personal property and funds aforesaid. It is also shown by the petition that the administrator of the estate of Bayard Gray has in his hands, over and above the sum of $7,263.75, more than one-third of the assets of said estate with which to pay all of the debts of said decedent. The petitioners further claim that they are entitled to receive said money, as the maternal heirs of said Bayard Gray, in the several amounts set out in the petition.

An answer was filed by John F. Gray and other paternal

heirs. The first paragraph was in general denial. The second paragraph asks that the distribution be made to both the paternal and maternal heirs; that all of said parties are heirs at law of Bayard Gray, "and constitute his sole and only surviving heirs on both the maternal and paternal lines of descent."

The court found for the petitioners that the facts stated in their said petition are true, and that the petitioners are each and all heirs at law, and the only heirs at law, in the maternal line of Bayard Gray, deceased. The court also found that "Bayard Gray died on May 24, 1908, intestate, a resident of Marion county, State of Indiana, unmarried, and without issue, and left surviving him neither father nor mother, brothers nor sisters, or their descendants, grandfather or grandmother, but left surviving him as his sole and only heirs at law a maternal aunt and both paternal and maternal cousins; that the whole of said before-mentioned sum belongs to the petitioners herein, and that distribution thereof should be made by the administrator among said petitioners in the proportions and amounts set forth in said petition, upon the execution of a satisfactory bond by each of said petitioners to the administrator herein, with sufficient surety and penalty for the return of any portion thereof with interest, whenever necessary for the payment of debts or claims, or to equalize the shares among those entitled thereto." The court also found that more than one-third of the assets in the hands of the administrator remaining after the distribution will be sufficient to pay all debts against said estate then known.

Five errors are assigned and relied upon for reversal. The first, second, third and fifth specifications of error all relate directly or indirectly to the sufficiency of said petition. The fourth error assigned is upon the overruling of appellant's motion to modify the judgment, or that "said judgment should state whether the funds

derived from the estate of Eliza J. Gray should be liable to the payment of its proportionate share of all the debts and costs of administration against Bayard Gray's estate.'' There was no error in overruling this motion, as the question of costs was not an issue tendered either by the petition or by the answer. The distribution petitioned for

2. was under §§2902, 2903 Burns 1908, Acts 1883 p. 151, §18, §2380 R. S. 1881, and the court required refunding bonds to be given to the administrator by each distributee, conditioned as provided by law. The court was not required to settle legal questions not connected with the case.

Appellees in their brief present a number of objections to the form of the pleadings and motions filed by appellants. While the statute provides that the rules of practice

3. and procedure in civil cases shall apply in probate matters where no rule is provided, yet in a matter of this kind, where the petition is addressed to the court, the rules will not be applied in strictness. The purpose is to present the matter in dispute to the court in a clear and concise form. The court below did not have any difficulty in ascertaining from the papers the questions presented, nor has this court on appeal.

The one remaining and controlling question is whether the funds in the hands of the administrator of Bayard Gray's estate should be distributed pursuant to the second

4. or the third subdivision of §2994 Burns 1908, §2471 R. S. 1881, wherein it is provided: ''Second. If the inheritance came to the intestate by gift, devise, or descent from the maternal line, it shall go to the maternal kindred in the same order; and if there be none of the maternal kindred entitled to take the inheritance, it shall go to the paternal kindred in the same order. Third. If the estate came to the intestate otherwise than by gift, devise, or descent, it shall be divided into two equal parts, one of which shall go to the paternal and the other to the maternal kin-

dred, in the order above described; and on the failure of either line, the other shall take the whole.''

The inheritance referred to must be held to include all inheritable property, and personal property, as well as real estate, possesses an inheritable quality. In order, how-

5. ever, to descend exclusively to either the maternal or paternal line, the inheritance must remain in kind, and pass in the same form in which it was inherited. But if such inheritance is converted, reinvested or changed by the heir or legatee, so that it loses its original form and quality, and becomes indistinguishable from other property of such heir or legatee, the ancestral character imparted to the inheritance in the first instance is lost, and it becomes simply a part of the estate of the last holder; and upon his death would be distributed under the third division of said section.

Counsel for appellants contend that there can be no ancestral quality in personal property when such property has been sold and converted into cash, as shown by

6. the admitted facts in this case. This would be true had Bayard Gray, during his lifetime, sold the property inherited from his mother, and reinvested the proceeds or commingled them with other funds, so that the identity of the particular money received from the sale of such property was lost. In that event, there could be no ancestral quality imparted to such money. But it is not questioned in this case that the property inherited from Eliza J. Gray remained in kind during the lifetime of Bayard Gray; and upon the death of Bayard Gray it descended in kind to the heirs entitled to receive it. Assuming that at the death of Eliza J. Gray the inheritance which passed to her son was impressed with an ancestral quality, it retained that ancestral quality at the death of the son, and at once was inherited by the maternal line. No change in the form of the inheritance, made by the administrator in collecting

obligations or in selling property, under the order of the court, after the death of Bayard Gray, could change its ancestral character. To lose such ancestral character, the change must have taken place during the lifetime of Bayard Gray.

It is said in the case of *Rountree* v. *Pursell* (1895), 11 Ind. App. 522, 537: ''Under our statute an heir is one who succeeds to the estate, both real and personal, immediately upon the death of the ancestor. The administrator, under the statute, is a mere trustee for the creditors and heirs of the intestate. If the personal property is not needed to pay debts, the heirs may distribute it among themselves without formal administration. The title they take they derive in the same manner as the title they acquire to the real estate of the deceased. They take title in both instances by force of the statute, and it matters not whether it be called descent or succession.''

It can make no difference that the estate may have come to Eliza J. Gray originally from her husband, who was the uncle of appellants and who was not of the blood of appellees. The right of inheritance in Indiana is fixed by the statutes

7. of descent, and not otherwise. The term ''ancestor,'' as used in the statutes of descent, means the person from whom the estate is inherited, and in determining

8. from whom the estate came, the rule is to trace the title only to the person last seized. *Murphy* v. *Henry* (1871), 35 Ind. 442, 450.

While the application of this rule may, in certain cases, involve a hardship, the wisdom of the rule will be seen when the difficulties and dangers incident to tracing title back to remote ancestors are considered.

Counsel for both appellants and appellees press upon our attention the case of *Rountree* v. *Pursell, supra.* The opinion of the court in that case is an able and learned discussion of the statutes of descent from an historical, as well as a legal, viewpoint, but we must look to the facts and the holding in

that case to ascertain the questions raised and the principles decided. The facts were that Daniel Gilkey died, leaving to his only child, Mary D. Gilkey, a large amount of real estate and personal property. Mary D. Gilkey was a minor, and her estate was managed by a guardian. The guardian collected the debts due the estate, and reinvested the proceeds, taking obligations in his own name, as guardian. He received the income from the real estate, collected the dividends declared upon stocks held by him, as such guardian, and out of the amount realized paid for the support and education of his ward. No separate account was kept, and the money received from the different sources constituted a single fund. While still a minor, Mary D. Gilkey died, leaving no heirs in the ascending or descending line, but, as in the case at bar, left cousins on both the paternal and maternal side. The paternal heirs claimed the entire estate, and the court held that such heirs were entitled to receive all of the estate which remained in the same form in which it came by inheritance to Mary D. Gilkey; but the personal estate, which had been changed under the management of the guardian, and the income from all of the estate, the court held to be free from any ancestral quality, and at the death of Mary D. Gilkey descended to the maternal and paternal heirs, one-half to each, as provided in the third subdivision of §2994, *supra*.

Appellants say that in that case, as in the case at bar, the change in the character of the property took place while it was in the custody of the law, and therefore the rule declared must apply here. There is, however, a clear distinction in the case cited. The heirs claiming by virtue of the statute had no interest of any kind until after the death of Mary D. Gilkey. When the guardian changed the character of the property, inherited from Daniel Gilkey, during the life of the ward, its ancestral quality was lost, and in that condition the property passed to the daughter's heirs. In the case under consideration, the identical property in-

392    APPELLATE COURT OF INDIANA,

Haskell, etc., Car Co. *v.* Allegheny Forging Co.—47 Ind. App. 392.

herited by Bayard Gray from his mother, upon his death, passed to his heirs in the identical form in which it was inherited by him. This imparted to the property in question ancestral qualities, and the property descended under the second subdivision of §2994, *supra,* to the maternal heirs. There is no error in the record.

Judgment affirmed.