## Dunn v. Means.

[No. 7,308. Filed October 3, 1911.]

1. Parent and Child.—*Adopted Children.*—*Statutes.*—*Construction.*—The statutes providing for the adopting of children should be construed so as to establish reciprocal relations between such adopting parents and the adopted children, the purpose being to make the legal status of such children the same as if they were the real children of such parents. p. 387.

2. Descent and Distribution.—*Adopted Children.*—*Husband and Wife.*—Under §3027 Burns 1908, §2489 R. S. 1881, providing that "if a * * * wife die intestate, leaving no child, but leaving a

father and mother, or either of them, * * * her property * * * shall descend three-fourths to the * * * widower, and one-fourth to the father and mother jointly, or to the survivor of them," and §870 Burns 1908, Acts 1883 p. 61, providing that an adopted child shall "be entitled to and receive all the rights and interest in the estate of such adopting father or mother * * * that such child would if the natural heir of such adopting father or mother: Provided, however, that should such adopted child die intestate, without leaving a wife or husband, issue or their descendants * * * seized of any * * * property which may have come to such child by gift, devise or descent from such adopting father or mother, such property * * * shall * * * descend to the heirs of said adopting father or mother," and §871 Burns 1908, §826 R. S. 1881, providing that an adopted child "shall occupy the same position" as a natural child, the property of an adopted daughter, leaving a natural father and mother, an adopting father, a husband, but no children, descends three-fourths to the husband, and one-fourth to the adopting father; and the fact that the form of the property inherited from the adopting mother had been changed, does not change the descent. p. 388.

3. STATUTES.—*Derogatory of Common Law.—Construction.*—Statutes in derogation of the common law will be strictly construed, but not in such manner as to defeat their purpose. p. 388.

From Johnson Circuit Court; *J. E. McCullough,* Special Judge.

Suit by John C. Dunn against Ora W. Means. From a judgment for defendant, plaintiff appeals. *Reversed.*

*William Featherngill,* for appellant.
*Miller & Barnett,* for appellee.

ADAMS, J.—This suit was brought by appellant against appellee, asking for the partition of a certain lot in the city of Franklin, and for the appointment of a commissioner to sell said lot and distribute the proceeds, one-fourth to appellant and three-fourths to appellee.

The question presented by this appeal arises upon an exception to the conclusions of law stated by the court upon the special finding of facts. The facts, as disclosed by the finding, are, briefly, as follows: On September 30, 1886,

John C. Dunn, the appellant, and his wife, Elizabeth F. Dunn, on their joint petition to the Johnson Circuit Court, and by the order and judgment of said court, adopted a minor child, Lily B. Littell, as their own child, who thereupon took the name of Lily B. Dunn. At the time of said adoption, the natural parents of said child were George M. Littell and Mary J. Standiford. Elizabeth F. Dunn had received said child into her keeping a few days after her birth, and continued to keep her. Soon after the marriage of appellant and Elizabeth F. Dunn, which occurred when said child was about nine years of age, she was adopted as the child of John C. and Elizabeth F. Dunn. She remained a member of said family until May 9, 1900, when she married appellee, Ora W. Means. Lily B. Dunn had no property at the time of her adoption, and never received any property from her natural parents. On July 24, 1901, Elizabeth F. Dunn died intestate in Johnson county, the owner of certain real estate and personal property in said county. She left surviving her, as her only heirs at law, appellant and said adopted daughter, Lily B. Means. Lily B. Means inherited from her adoptive mother the undivided two-thirds of twenty-five acres of land, and received, from the administrator of the estate of Elizabeth F. Dunn, United States bonds of the value of $5,600, a check for $1,437.78, also a check for $84.28, the amount she had paid on debts of decedent. The bonds were sold, the checks were cashed, and the whole amount, aggregating $7,122.06, deposited in the Citizens National Bank of Franklin to the credit of Lily B. Means, and so remained until checked out by her. Subsequently Lily B. Means purchased from appellant his interest in the twenty-five acres inherited from his wife. She sold said twenty-five acres for $6,000, which amount was also placed to her credit in the Citizens National Bank of Franklin. In December, 1901, said Lily B. Means purchased the lot in the city of Franklin which is the subject of this action, paying therefor the sum of $5,000, payment being

made in part by a check received from the sale of the real estate before mentioned, and by her own personal check drawn against her account in the Citizens National Bank. Lily B. Means had no property at the time of the purchase of said lot, except that herein noted. On April 14, 1907, she died intestate, and left surviving her no child nor children, nor the descendants of any child or children, but left her husband (appellee), her adopted father (appellant), her natural father, George M. Littell, and her natural mother, Mary J. Standiford. At the time of her death she was the owner in fee simple and in possession of said lot in the city of Franklin, and said property was not susceptible of division without injury to the owners thereof. On October 14, 1907, George M. Littell, his wife joining therein, and Mary J. Standiford, executed quitclaim deeds to appellee, releasing to him whatever interest they had in said lot.

Upon the facts found, the court stated as conclusions of law that appellant had no interest in the real estate of which Lily B. Means died the owner, was not entitled to partition thereof, and that appellee was entitled to have his title quieted.

Appellant excepted to the conclusions of law, and assigned said conclusions as error. The question presented for determination is, Did the adoptive father inherit the undivided one-fourth of said estate from Lily B. Means, or was said undivided one-fourth inherited by her natural father and mother, and therefore passed to appellee by their quitclaim deed?

Section 3027 Burns 1908, §2489 R. S. 1881, as applied to the facts before us, provides that when a wife dies intestate, leaving no child, but leaving a widower and a father surviving her, her property, real and personal, shall descend three-fourths to the widower and one-fourth to the father. Section 870 Burns 1908, Acts 1883 p. 61, provides that after the adoption of a child, "it shall take the name in which it is adopted and be entitled to and receive all the rights

and interest in the estate of such adopting father or mother, by descent or otherwise, that such child would if the natural heir of such adopting father or mother: Provided, however, that should such adopted child die intestate, without leaving wife or husband, issue or their descendants, surviving him or her, seized of any real estate or owning any personal property which may have come to such child by gift, devise or descent from such adopting father or mother, such property so coming to such adopted child shall, on its death, descend to the heirs of said adopting father or mother the same as if such child had never been adopted.'' Section 871 Burns 1908, §826 R. S. 1881, provides that ''after the adoption of such child, such adopted [adopting] father or mother shall occupy the same position toward such child that he or she would if the natural father or mother, and be liable for the maintenance, education and every other way responsible as a natural father or mother.''

The manifest purpose of the statutes relating to the adoption of children cannot be construed to impose duties and obligations alone upon the adopting parents, but
1.  should be held to establish a reciprocal relation between adoptive parents and adopted children. At common law, the adoption of children by legal process was unknown, and we have borrowed the principle of adoption, incorporated into our statutes, from the civil law, which made an adopted child the child of the adopting parent for all legal purposes; and by our statutes the legal status of an adopted child is fixed. No distinction is made between the rights of an adopted child in the estate of the adopting father or mother and a natural child.

The findings in this case disclose that the deceased wife of appellee, who was the adopted daughter of appellant, inherited from her adoptive mother, who was the wife of appellant, real estate and personal property of the value of more than $10,000, all of which was changed from the form in which it was inherited by the intestate during her life-

time, but with the money realized from the property inherited, the intestate purchased the real estate in suit. This property, at the time of the intestate's death, was not impressed with any ancestral quality, although all the property possessed by such intestate at the time of the purchase came to her from her adoptive mother.

The immediate question for determination is, Who is meant by the father and mother, in this case? It has been held by this court that the purpose of adoption is to fix the status of an adopted child as near as possible to that of a natural child, and to give it the same position in the family, together with all the rights and privileges, of a child of both the husband and wife. The name of the child is changed, its identity is merged into that of the adopting parents, and it becomes their child in all but blood. While the rule is that statutes in derogation of the common law will be strictly construed, the statutes of adoption will not be so strictly construed as to defeat their purpose. *Bray* v. *Miles* (1889), 23 Ind. App. 432. That courts will look to the legislative intention in the interpretation of these statutes, abundantly appears by the decisions of the Supreme Court.

In the case of *Davis* v. *Krug* (1884), 95 Ind. 1, 10, it is said: "If we are right in our interpretation of the legislative intention, in the enactment of our law for the adoption of heirs, then it must be that the adopting father or mother, or his or her heirs, will inherit from the adopted child all such property, real or personal, as came to such child by gift, devise or descent, from the adopting parent or parents, whenever he, she or they would have inherited such property, if the adopted child had been the natural child of the adopting father or mother. In such case and as to such property, we are of opinion that the adopting father or mother, or his or her heirs, will inherit from the adopted child, to the entire exclusion of the natural heirs of such child."

That the equities of the case will occupy a large place in construing the statutes in question, is fully established by the opinion of Elliott, J., in the case of *Humphreys* v. *Davis* (1885), 100 Ind. 274, 50 Am. Rep. 788, in which it is said: ''The equity of the case is with the surviving husband, and against the natural mother who gave up her child, sundering all maternal ties, and suffering a stranger to take a mother's place. The husband, who enabled his wife to acquire or preserve her property, has infinitely stronger claims than the natural mother, who cast aside her child. Rules of law are intended to secure justice, and justice requires that the husband who has maintained the wife should be preferred to the mother of a child which was the child of his wife only by adoption. Equity is natural justice, and natural affection and natural right make a strong equity in the husband's favor.'' Again, at page 281, it is said: ''As the status of the surviving husband and adoptive father is that of father, his interest in the land which the deceased child held by virtue of the rights vested in it by adoption is that of a father, since it is of that property, as the subject, that the status of parent and child is predicated. This is a just as well as a logical result. It is not to be presumed that the legislature meant to violate logical rules by creating the legal relation of child without the corresponding one of parent, nor that they meant to thrust out the surviving husband and father for the benefit of a person that was a stranger to the ancestor who was the source of title. * * * To produce uniformity and harmony, it must be held, as we now hold, that the death of the adoptive child casts the inheritance which came to him through the joint adoption, back to his adoptive father, and not upon the natural mother who was an utter stranger to the person from whom the title flowed.''

In the case of *Paul* v. *Davis* (1885), 100 Ind. 422, 423, the court said: ''The adoptive child does become the stirps or stock of inheritance, but to whom does it sustain this re-

lation as to property acquired by inheritance from the adoptive parents? Doubtless, this relation exists between such a child and its children; they are of the original stock of descent, for they bear the relation of grandchildren to the adoptive parents. The legal relation does not end with the death of the adoptive child, and so the line of descent goes back, in default of wife or children, to the source from which the property came. This is strictly equitable and in harmony with principle. * * * The natural mother is not of the stock from which the property came to the child which was given in adoption to others, and between her and that stock there is a gap which is not bridged by any statute or by any principle of justice. It is strictly consistent with justice, with principle and with our statutory scheme of descents, to prefer the adoptive father to the natural mother in cases where the adoptive father was of the original stock of inheritance. The natural mother is as to that stock an utter stranger, and, as to property descending from that stock, has suffered another to fully occupy the status of parent with all of its legal incidents. Where the adoptive child dies under circumstances such as would, in a similar case, cast the inheritance upon the father of a natural child, the adoptive father inherits the property which the adoptive child acquired by virtue of the status fixed by the act of adoption.''

While these cases are predicated upon a state of facts different from the facts in this case, the principle declared, that the adoptive father inherits the property of the adoptive child, acquired by virtue of the status fixed by the act of adoption, is general, and includes the case made out by this appeal.

In support of the judgment below, counsel for appellee cite the case of *Rountree* v. *Pursell* (1895), 11 Ind. App. 522 —a case which we think was properly decided—and which was followed by the later case of *Gray* v. *Swerer* (1911), 47 Ind. App. 384, but both cases call for a construction of §2994

Burns 1908, §2471 R. S. 1881. These cases hold that where the intestate dies without leaving husband or wife, and without direct heirs in the ascending or the descending line, but with collateral heirs on the paternal and the maternal side, the inheritance, if it came by gift, devise or descent from the paternal line, shall go to the paternal heirs, and if from the maternal line, it shall go to the maternal heirs, but if the estate came to the intestate otherwise than by gift, devise or descent, half shall go to the paternal kindred and half to the maternal kindred. These cases further hold, that, in order to descend exclusively to the paternal or the maternal kindred, the inheritance at the time it passed to the intestate must be in specie, and descend from the intestate in the same form in which it was inherited. This rule, which requires the perfect identification of the property in order that it may pass to one line of kindred exclusively, is a wise one; for while the maternal and the paternal kindred may be of the same blood, and of equal degrees of kinship to such intestate, yet, if the inheritance clearly and unmistakably came from one line, and was not changed by the intestate during his lifetime, at his death it should pass to the line from which it came. This case does not call for a construction of §2994, *supra*.

In this case the natural parents were strangers to the blood of the woman from whom intestate inherited all that she had; and while the form of the inheritance was changed, the substance remained the same, and there was no confusion by the intermingling of the inheritance with property acquired from other sources. If, as we have seen, the statutes for the adoption of children, and the distribution of property incident to such adoption, are to be construed to secure justice, and are in favor of the strong equities of the case presented by this appeal, then we believe that in this case appellant must be deemed to be the father, as the word is used in §3027, *supra*. To hold otherwise, and to reward the natural parents by casting upon them the fruits of the

industry of strangers to their blood, and to take all interest in the property from the surviving husband of the woman who took intestate within a few days after her birth, raised her, and richly endowed her, would be violative of every principle of right and natural justice, and would be opposed to public policy, which favors natural family life, and does not favor those who seek to escape the responsibilities of parenthood. With this view of the case, we think the court erred in stating its conclusions of law.

The judgment is therefore reversed, with instructions to the lower court to restate its conclusions of law in accordance with this opinion, and for further proceedings not inconsistent herewith.