## IN RE GUARDIANSHIP OF BROWN.

### THE RICHLAND TRUST CO., ADMR., APPELLEE, *v.* BRIDGES ET AL., APPELLANTS.

(Nos. 606 and 614—Decided May 11, 1943.)

*Mr. C. W. Chorpening* and *Mr. Wm. T. Devor,* for the heirs of James E. Brown, appellees.

*Mr. Leslie K. Wagner* and *Mr. Joseph A. Bayer,* for the heirs of Martha E. Brown, appellants.

*Mr. Herbert H. Schettler,* for The Richland Trust Company, administrator.

SHERICK, J. Both of these causes had their origin in the Probate Court, and come to this court on appeals on questions of law. The actions are consolidat-

ed in this court. Cause No. 606 is a matter of exceptions filed to the final account of the guardian of Martha E. Brown. Its only purpose and the relief sought was to change the property accounted for back into the identical property which the guardian originally received. The exceptors, who are the James E. Brown heirs, failed to accomplish their purpose. They appeal from the order which denied them relief. This appeal is of little consequence in view of the fact that cause No. 614, an action for a declaratory judgment instituted by the subsequent administrator of the estate of Martha E. Brown, now deceased, resulted in their favor. That is, the declaratory judgment established the same right which the exceptors sought. The question, therefore, which this court must solve is whether this judgment is contrary to law. The agreed statement of fact in the second action discloses the following facts.

On January 21, 1938, James E. Brown died intestate. He was survived by his widow, Martha E. Brown, who was his only heir at law. From long prior to her husband's death to the 23rd day of May, 1942, the date of her death, Martha E. Brown was insane and confined in a state hospital. She likewise died intestate. By operation of law, Martha E. Brown inherited the fee in the property of which her husband died seized. Martha E. Brown had no separate estate. She had no nearer next of kin or heirs at law than surviving brothers and sisters and those that stand in lieu thereof. James E. Brown is likewise survived by brothers and sisters and those who stand in lieu thereof.

James E. Brown died seized of the following property:

Three valueless notes appraised at            $    3.00
Mansfield B. & L. Co. savings account          3,718.56
Mechanics B. & L. Co. account                  2,645.50
Mechanics B. & L. Co. savings account ·       10,063.74
Citizens S. & L. Co. account                   4,544.23
Richland Trust Co. checking account              305.62

His administrator duly accounted for and assigned these debtor and creditor accounts to the guardian of Martha E. Brown. James E. Brown also died seized of 24½ acres of land, which by certificate of transfer at his death were transferred to her. During the course of the guardianship, her guardian, by a proper proceeding to sell land for a better investment and upon the authority of a valid court order, sold and conveyed the real estate to another.

It is also stipulated that the administrator of the estate of James E. Brown had paid to the guardian of Martha E. Brown, the sum of $3,500 in cash as the widow's statutory exemption of $2,500 and as the widow's year's allowance of $1,000.

It is further agreed that the relict's guardian, at the solicitation of his bonding company, with the knowledge of, but without having made application or obtaining an order of the Probate Court, closed all of the accounts so by him received, and these sums together with the proceeds of the sale of real estate, and the cash representing the widow's year's allowance and statutory exemption, were converted into the following items:

Three valueless notes                         $    3.00
Richland Trust Co. checking account              450.18
10 U.S. Savings Bonds, appraisal $7,500        8,000.00
1 U.S. Treasury Bond face value $500             535.00
5 U.S. Treasury Bonds face value $5,000        5,350.00
Richland Trust Co. saving account              2,156.80
The Farmers S. & T. Co. savings account        5,214.82
Mansfield S. T. Natl. Bank savings account     5,214.82

These items at the conclusion of the guardianship were delivered over to and are now held by the administrator of the estate of Martha E. Brown. By its petition the administrator asks for instruction by the court as to whom this fund shall be distributed. That is, shall it all go to the brothers and sisters of the wife relict, who are the Bridges; or is any part of it to descend to the brothers and sisters of James E. Brown?

It will be perceived that the matters in issue spring from and require a re-examination of Section 10503-5, General Code, popularly known as the "half and half" statute.

The trial court determined that the sum of $3,500, which represents the widow's statutory exemption and year's allowance, as well as the earnings subsequent to the death of the relict, are not within Section 10503-5, General Code, and descended to the Bridges heirs. It was otherwise held that, as to the balance of the estate, the same was the "identical" property which came from James E. Brown, in which the Brown and Bridges heirs shared equally under the "half and half" statute.

At first blush it would seem from *Guear* v. *Stechschulte, Admr.,* 119 Ohio St., 1, 162 N. E., 46; *Wilson* v. *Eccles,* 119 Ohio St., 184, 162 N. E., 797; and *Knauss, Admr.,* v. *Knauss,* 58 Ohio App., 183, 16 N. E. (2d), 483, together with the subsequent amendment of Section 10503-5, General Code, 119 Ohio Laws, 394, 396, 397, which now embodies the proviso "identical property" coined by the Supreme Court as the prenatal, though then undeclared, legislative intent, that the declaratory judgment appealed from must be reversed. Our temerity, however, prompts hesitancy and further inquiry in view of the particular factual situation herein encountered. We believe that we can fully justify a departure from the rule of the authorities noted.

So far as we are able to learn, only a few of the states have to date perceived the injustice of the usual course of descent of property of a deceased spouse, through a husband or wife relict, when both died intestate and neither are survived by heirs at law nearer of kin than surviving brothers and sisters; that is, that such property shall go exclusively to the next of kin of the last surviving spouse, irrespective of its source of origin. It should be apparent that some theretofore unusual happening which did not warrant departure has now become a not unusual circumstance in every day life. Few days now pass without advice through the public press that a husband and wife have met simultaneous death in an automobile accident. More frequently one survives the other by a couple of hours or days. These shocking occurrences and subsequent resulting injustice in the devolution of property of him or her who first died when neither spouse was survived by heirs of their body or an adopted child, unquestionably provoked our Legislature to modify the existing laws of descent and create an exception in such cases. It conceived that justice would be more properly served by a rule of "half and half." This was the prime purpose and intent of Section 10503-5, General Code. It however was deemed equally wise that if considerable time of enjoyment of such property was had by a surviving spouse that it might not so pass unless it was the "same" property or as it is now written the "identical property."

We cannot and do not quarrel with our superior, and it is to be understood that we conform to its pronouncements upon the situations under review in the two cases noted. The fact is that we propose to develop a statement that is therein noted which did not then require further pursuit. The situation which confronts this court, however, necessitates our further

quest. In *Wilson* v. *Eccles, supra,* the court makes this comment:

"It is always in the power of the surviving husband or wife to direct the course of descent and distribution by making a conveyance during lifetime, or by devise or bequest in a last will and testament."

Section 10503-5, General Code, does not confer this power, but such is indubitatively true. If this was not the legislative intent then its statutory phraseology is not explainable.

These cases hold that it can also be accomplished by the spouse relict if he or she change the character of the property inherited so that it can be said not to be the "identical property."

From these observations and the reason, purpose and intent of the statute it should be and is clear that the widow or widower might by his or her own affirmative act nullify its fifty-fifty provision. Can anyone else do these things and accomplish the same end? Our answer is no, unless an administrator or guardian or the court which directs both is empowered by positive provision of law to do so. If any statute commands or permits such an act, then it must of course follow that the act of the representative or the court is in fact his or her act of conversion. It is equally certain if conversions are effected and permitted by one other than a surviving spouse without lawful power and authority then that other assumes and possesses a power which the Legislature may not delegate, that is a power to control the descent and distribution of property. If this be not true then courts and estate representatives by unauthorized acts are permitted to usurp legislative powers and emasculate the chief purpose of the fifty-fifty statute. It is no answer to say that they act for the surviving spouse by virtue of their representation or office. They only do so when

they act in conformity to existing law. The statute gives the survivor a personal privilege which cannot be exercised by one not empowered to do so.

The courts of Indiana, in *Gray* v. *Swerer*, 47 Ind. App., 384, 94 N. E., 725, observe that:

"No change by an administrator in the form of property acquired by intestate by gift, inheritance, etc., affects its ancestral character under Burns' Ann. St. 1908, Sec. 2994, giving intestate property to the line from which it was acquired."

The court in that case distinguishes its prior holding in *Rountree* v. *Pursell*, 11 Ind. App., 522, 39 N. E., 747, which held that a guardian of a minor might change the character of such property, because it was said to be "within the custody of the law." It is fair to presume therefrom that what changes were made by the guardian were made under authority of law.

We think that a clear distinction exists between those instances where a personal representative's act of conversion is activated and sanctioned by existing law, from those cases where a representative converts and reinvests property without legal authority.

Martha E. Brown possessed no separate estate. She was insane and never came into the actual possession of her husband's estate. She was never capable of directing or changing its course of descent. There could not have been any comingling of funds. The investments of her deceased husband were converted by her guardian into money and reinvested. Building and loan deposits whose soundness and availability are not questioned are changed into bank savings accounts and government bonds. It is not claimed or shown or stipulated that this transformation advantaged or bettered his ward's estate. It was done at the request of the guardian's bonding company, and abetted perhaps by the fact that the guardian was a banker. Such a

change was not required by law. Neither was it made upon written application nor ordered nor approved by the court in a journal entry which is the only medium through which a court of record may speak. We therefore hold that the guardian's acts in converting the deceased spouse's investments were not for the betterment of the ward's estate and were unauthorized by her or by law and cannot disinherit the Brown heirs of their equal share in the reinvested portion of the ward's estate which came to her by descent from their brother's estate.

With respect to the proceeds of a sale of personal property, if such was had according to law; the $3,500 exemption and allowance which the law allows and directs; the proceeds of the sale of real estate which is stipulated to have been made in accordance with law; and any income earned on the ward's estate after it came into her guardian's possession, the usual rule of descent must prevail. These items represent matters that are or have been done in the administration of the ward's estate for her best interests. They are acts sanctioned by law. The representative who performed them acted therein for her and are binding upon the Brown heirs.

It follows that the judgment of the Probate Court in cause No. 614 is modified as herein indicated and affirmed as modified. The judgment in cause No. 606 is affirmed.

*Judgment modified and affirmed in cause No. 614.*
*Judgment affirmed in cause No. 606.*

MONTGOMERY, P. J., and PUTNAM, J., concur.